IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASTENJOHNSON, INC.<br>4399 Corporate Road<br>Charleston, SC 29423-8001<br><br>Plaintiff,<br><br>v.<br><br>COLUMBIA CASUALTY COMPANY<br>CNA Plaza<br>Chicago, Illinois 60685<br><br>AMERICAN INSURANCE COMPANY<br>777 San Marin Drive<br> Novato, California  94998<br><br>Defendants. | Civil Action No.<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, AstenJohnson, Inc. ("AstenJohnson"), by its undersigned counsel, as its

Complaint, alleges as follows:

## NATURE OF ACTION

1.      This is an action for declaratory judgment, breach of contract, bad faith,

and breach of fiduciary duty arising out of the refusal of the insurance company defendants to

provide insurance coverage to AstenJohnson for underlying asbestos and other bodily injury

claims as required by the insurance policies that AstenJohnson's predecessors-in-interest

purchased from them and other wrongful conduct.

## PARTIES

2.      AstenJohnson is a corporation organized and existing under the laws of

the State of Delaware, with its principal place of business at 4399 Corporate Road, Charleston,

South Carolina.  AstenJohnson is the successor-in-interest to all of the entities listed as named insureds in the insurance policies discussed herein.

3.      Defendant Columbia Casualty Company ("Columbia Casualty") is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at CNA Plaza, Chicago, Illinois.  At all times relevant hereto, Columbia Casualty is and was licensed to transact business in the Commonwealth of Pennsylvania, and Columbia Casualty does and did transact business in the Commonwealth of Pennsylvania.

4.      Defendant American Insurance Company ("American") is an insurance company organized and existing under the laws of the State of Nebraska with its principal place of business at 777 San Marin Drive, Novato, California  94998.  At all times relevant hereto, American is and was licensed to transact business in the Commonwealth of Pennsylvania, and American does and did transact business in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

5.      The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this action occurred in this District, and American and Columbia Casualty both reside in this District.

## FACTUAL BACKGROUND

### Background Of AstenJohnson's Business

7.     At all times relevant hereto, AstenJohnson engaged in the manufacture and distribution of products, including dryer fabrics containing chrysotile asbestos, at least between the 1960s and 1980.

### Underlying Asbestos-Related Claims Against AstenJohnson

8.     Since the late 1970s, tens of thousands of claimants (collectively, the "Claimants") have named AstenJohnson as a defendant in thousands of lawsuits filed in federal and state courts in approximately twenty-four states (the "Underlying Actions").  AstenJohnson is also continuing to be sued in thousands of similar actions.

9.     Claimants in the Underlying Actions typically have sought and seek damages for purported bodily injuries, diseases, and fear of contracting same, allegedly resulting from alleged exposure to chrysotile asbestos-containing products manufactured, sold, and distributed by AstenJohnson.

10.     The Claimants in the Underlying Actions typically allege exposure to asbestos over extended periods of time covering multiple years, with injuries purportedly occurring from the date of the first alleged exposure to the present.

### AstenJohnson's Insurance Program

11.     From at least 1963 through at least the early part of 1983, AstenJohnson was principally located in Philadelphia, Pennsylvania and Devon, Pennsylvania.

12.     From at least 1963 through at least the early part of 1983, AstenJohnson, through its insurance brokers, who were also located in Pennsylvania, purchased primary-layer comprehensive general liability insurance policies (the "Columbia Casualty Primary Policies") and various excess and umbrella liability insurance policies from Columbia Casualty (collectively, the "Columbia Casualty Excess and Umbrella Policies") and American (collectively, the "American Excess and Umbrella Policies").

13.     The Columbia Casualty Primary Policies and the Columbia Casualty and American Excess and Umbrella Policies were delivered to AstenJohnson at its headquarters in Philadelphia and/or Devon, Pennsylvania.

### The Columbia Casualty Primary Policies
### The 1981-82 Columbia Casualty Primary Policy

14.     Prior to April 1, 1981, AstenJohnson purchased Columbia Casualty Policy No. CCP 186 60 01, which provided comprehensive general liability insurance coverage for the period between April 1, 1981 and April 1, 1982 (the "1981-82 Columbia Casualty Primary Policy," a copy of which is attached as Exhibit "1" hereto).

15.     The 1981-82 Columbia Casualty Primary Policy was a primary layer comprehensive general liability insurance policy.

16.     The 1981-82 Columbia Casualty Primary Policy provided $1 million in per occurrence and aggregate liability limits, and had a $2,500 deductible.

17.     Pursuant to the terms of the 1981-82 Columbia Casualty Primary Policy, Columbia Casualty agreed to indemnify AstenJohnson for all sums AstenJohnson would become

liable to pay as damages as a result of bodily injuries to third parties caused by an occurrence, such as was alleged in the Underlying Actions:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of … bodily injury … to which this insurance applies, caused by an occurrence.

18.    Pursuant to the terms of the 1981-82 Columbia Casualty Primary Policy, Columbia Casualty also had a duty to defend, promising to defend AstenJohnson in any suits, such as the Underlying Actions, that were potentially covered by the indemnification provisions quoted above:

> [T]he company shall have the right and duty to defend any suit against the insured seeking damages on account of bodily injury …, even if any of the allegations of the suit are groundless, false or fraudulent.

19.    The defense obligations imposed by the 1981-82 Columbia Casualty Primary Policy required Columbia Casualty to provide and pay for AstenJohnson's defense to claims in addition to and outside of the indemnity limits mentioned in paragraph 16 above.

20.    Pursuant to the 1981-82 Columbia Casualty Primary Policy, "bodily injury" meant "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at anytime."

21.    Pursuant to the 1981-82 Columbia Casualty Primary Policy, "occurrence" meant an "accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured."

22.     The 1981-82 Columbia Casualty Primary Policy contained a purported asbestosis exclusion, providing as follows:

> It is agreed that this policy does not apply to any claim alleging an exposure to or the contracting of asbestosis or any liability resulting therefrom.

23.     The Underlying Actions aver claims and occurrences that are within the scope of the coverage provided by the 1981-82 Columbia Casualty Primary Policy.

### The 1982-83 Columbia Casualty Primary Policy

24.     Prior to April 1, 1982, AstenJohnson renewed its primary level of insurance coverage with Columbia Casualty, purchasing Columbia Casualty Policy No. CCP 186 61 10, which provided comprehensive general liability insurance coverage for the eighteen month period between April 1, 1982 and October 1, 1983 (the "1982-83 Columbia Casualty Primary Policy," a copy of which is attached as Exhibit "2" hereto).

25.     The 1982-83 Columbia Casualty Primary Policy was a primary layer comprehensive general liability insurance policy.

26.     The 1982-83 Columbia Casualty Primary Policy provided $1 million in per occurrence and aggregate liability limits, and had a $2,500 deductible.

27.     Pursuant to the terms of the 1982-83 Columbia Casualty Primary Policy, Columbia Casualty agreed to indemnify AstenJohnson for all sums AstenJohnson would become liable to pay as damages as a result of "bodily injury" to third parties caused by an "occurrence," such as was alleged in the Underlying Actions:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because

of … bodily injury … to which this insurance applies, caused by
an occurrence.

28.     Pursuant to the terms of the 1982-83 Columbia Casualty Primary Policy,

Columbia Casualty also had a duty to defend, promising to defend AstenJohnson in any suits,

such as the Underlying Actions, that were potentially covered by the indemnification provisions

quoted above:

> [T]he company shall have the right and duty to defend any suit
> against the insured seeking damages on account of bodily injury
> …, even if any of the allegations of the suit are groundless, false or
> fraudulent.

29.     The defense obligations imposed by the 1982-83 Columbia Casualty

Primary Policy required Columbia Casualty to provide and pay for AstenJohnson's defense to

claims in addition to and outside of the indemnity limits mentioned in paragraph 26 above.

30.     Pursuant to the 1982-83 Columbia Casualty Primary Policy, "bodily

injury" meant "bodily injury, sickness, or disease sustained by a person, including death resulting

from any of these at anytime."

31.     Pursuant to the 1982-83 Columbia Casualty Primary Policy, "occurrence"

meant an "accident, including continuous or repeated exposure to conditions, which results in

bodily injury or property damage neither expected nor intended from the standpoint of the

Insured."

32.     The 1982-83 Columbia Casualty Primary Policy contained a purported

asbestosis exclusion, identically-worded with the 1981-82 Columbia Casualty Primary Policy,

providing as follows:

It is agreed that this policy does not apply to any claim alleging an exposure to or the contracting of asbestosis or any liability resulting therefrom.

33.     The Underlying Actions aver claims and occurrences that are within the scope of the coverage provided by the 1982-83 Columbia Casualty Primary Policy.

### The American First-Layer Umbrella Policies

### The 1981-82 American First-Layer Umbrella Policy

34.     Prior to April 1, 1981, AstenJohnson purchased an umbrella liability insurance policy from American, American Blanket Excess Liability Policy No. 0-82 XLB 146 84 46, which provided one year of insurance coverage for the period between April 1, 1981 and April 1, 1982 (the "1981-82 American First-Layer Umbrella Policy," a copy of which is attached as Exhibit "3" hereto).

35.     The 1981-82 American First-Layer Umbrella Policy was the first layer umbrella policy over the 1981-82 Columbia Casualty Primary Policy, having a primary policy period from April 1, 1981 until April 1, 1982.

36.     The 1981-82 American First-Layer Umbrella Policy provided $10 million in per occurrence and aggregate umbrella liability limits in excess over the primary policy limits ($1 million per occurrence and $1 million in the aggregate), if applicable, or the retained limit of $10,000 in the event that the occurrence was not covered by primary insurance.

37.     The 1981-82 American First-Layer Umbrella Policy was an "umbrella liability" insurance policy, meaning that it provided excess liability coverage in cases where the primary policy provided coverage and it dropped down to provide primary coverage in cases where the primary insurance company did not provide insurance coverage or became exhausted.

38.     Pursuant to Coverage A of the 1981-82 American First-Layer Umbrella Policy, American agreed to indemnify AstenJohnson for all sums AstenJohnson would become legally obligated to pay as damages in excess of the primary policy limits or the retained limit as a result of bodily injury liabilities, such as was alleged in the Underlying Actions:

> THE COMPANY … Agrees with the insured … To pay on behalf of the insured all sums which the insured shall become obligated to pay as damages by reason of liability imposed on the insured by law or assumed by the insured under contract on account of … bodily injury, sickness, or disease, shock, mental anguish or emotional upset.

39.     Pursuant to the terms of the 1981-82 American First-Layer Umbrella Policy, American also had a duty to defend, promising to defend AstenJohnson in underlying actions where, among other things, the underlying insurance was exhausted or non-existent:

> The company shall assume charge of the settlement or defense of any claim or suit against the insured seeking damages on account of personal injury, property damage or advertising liability covered by this policy and to which no primary insurance applies or on account of exhaustion of the aggregate limits of liability of the primary policies.

40.     The defense obligations imposed by the 1981-82 American First-Layer Umbrella Policy required American to provide and pay for AstenJohnson's defense to claims in addition to and outside of the indemnity limits mentioned in paragraph 36 above.

41.     The 1981-82 American First-Layer Umbrella Policy defined "personal injury" as, among other things, "bodily injury, sickness, or disease, shock, mental anguish or emotional upset."

42.     The 1981-82 American First-Layer Umbrella Policy defined "occurrence" as an "accident including continuous or repeated exposure to conditions, which results in

personal injury or property damage neither expected nor intended from the standpoint of the insured."

43.    The 1981-82 American First-Layer Umbrella Policy defined "products hazard" as "personal injury or property damage arising out of the named insured's products or reliance upon a representation or warranty made at anytime with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."

44.    The 1981-82 American First-Layer Umbrella Policy defined "named insured's products" as "goods or products manufactured, sold, handled or distributed by the named insured."

45.    The 1981-82 American First-Layer Umbrella Policy was a "follow form" insurance policy under coverage A and coverage B arising from products hazards, meaning that it provided excess liability coverage under coverage A and B from products liability claims only where the primary policy provided coverage:

> IT IS AGREED THAT THIS POLICY DOES NOT APPLY
> UNDER COVERAGE A AND B, EXCEPT INSOFAR AS
> COVERAGE IS AVAILABLE TO THE INSURED UNDER
> PRIMARY POLICIES, TO OCCURRENCE ARISING OUT OF
> THE PRODUCTS, HAZARDS OR THE COMPLETED
> OPERATIONS HAZARDS AS DEFINED IN THIS POLICY.

46.    American contends that as a result of the "follow form" nature of the 1981-82 American First-Layer Umbrella Policy, the 1981-82 Columbia Casualty Primary Policy's purported asbestosis exclusion was incorporated by reference into the 1981-82 American First-Layer Umbrella Policy.

47.     The Underlying Actions aver claims and occurrences that are within the scope of the coverage provided by the 1981-82 American First-Layer Umbrella Policy.

### The 1982-83 American First-Layer Umbrella Policy

48.     Prior to April 1, 1982, AstenJohnson renewed its first-layer umbrella liability insurance policy from American, purchasing American Blanket Excess Liability Policy No. 0-82 XLB 152 13 08, which provided eighteen months of insurance coverage for the period between April 1, 1982 and October 1, 1983 (the "1982-83 American First-Layer Umbrella Policy," a copy of which is attached as Exhibit "4" hereto).

49.     The 1982-83 American First-Layer Umbrella Policy was the first layer excess umbrella policy over the 1982-83 Columbia Casualty Primary Policy, having a primary policy period from April 1, 1982 until October 1, 1983.

50.     The 1982-83 American First-Layer Umbrella Policy provided indemnity limits of $10 million per occurrence and in the aggregate in excess over the primary policy limits ($1 million per occurrence and in the aggregate), if applicable, or the annual retained limit of $10,000 in the event that the occurrence was not covered by primary insurance.

51.     Like the 1982-83 American Third-Layer Excess Policy, referred to in paragraph 91 below, the 1982-83 American First-Layer Umbrella Policy provided for annualized aggregate indemnity limits, meaning that for each annual period it provided indemnity limits of $10 million:

> Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations [$10 million] as "aggregate" shall be the total limit of this Company's liability for all damages sustained during each annual period of this

policy because of (i) personal injury … arising out of the
completed operations hazard and products hazard, each as defined,
combined; or (ii) advertising whenever occurring by whatever
media, on account of all occurrences; or (iii) injury arising out of
any hazard, other than as described in (i) and (ii), to which the
primary policy affords coverage subject to an aggregate limit and
to which this policy also applies.

52.     As a result of the annualized aggregate indemnity limits, the 1982-83
American First-Layer Umbrella Policy provides $10 million in aggregate indemnity limits for the
period of April 1, 1982 until April 1, 1983, and an additional $10 million in aggregate indemnity
limits for the period of April 1, 1983 until October 1, 1983.

53.     The 1982-83 American First-Layer Umbrella Policy was an "umbrella
liability" insurance policy, meaning that it provided excess liability coverage in cases where the
primary policy provided coverage and it dropped down to provide primary coverage in cases
where the primary insurance company did not provide insurance coverage or became exhausted.

54.     Pursuant to Coverage A of the 1982-83 American First-Layer Umbrella
Policy, American agreed to indemnify AstenJohnson for all sums AstenJohnson would become
legally obligated to pay as damages in excess of the primary policy limits or the retained limit as
a result of bodily injury liabilities, such as was alleged in the Underlying Actions.

55.     Pursuant to the terms of the 1982-83 American First-Layer Umbrella
Policy, American also had a duty to defend, promising to defend AstenJohnson in underlying
actions where, among other things, the underlying insurance was exhausted or non-existent.

56.     The defense obligations imposed by the 1982-83 American First-Layer
Umbrella Policy required American to provide and pay for AstenJohnson's defense to claims in
addition to and outside of the indemnity limits mentioned in paragraphs 50-52 above.

57.     The 1982-83 American First-Layer Umbrella Policy defined "personal injury" as, among other things, "bodily injury, sickness, or disease, shock, mental anguish or emotional upset."

58.     The 1982-83 American First-Layer Umbrella Policy defined "occurrence" as an "accident including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured."

59.     The 1982-83 American First-Layer Umbrella Policy defined "products hazard" as "personal injury or property damage arising out of the named insured's products or reliance upon a representation or warranty made at anytime with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."

60.     The 1982-83 American First-Layer Umbrella Policy defined "named insured's products" as "goods or products manufactured, sold, handled or distributed by the named insured."

61.     The 1982-83 American First-Layer Umbrella Policy was a "follow form" insurance policy under coverage A and coverage B arising from products hazards, meaning that it provided excess liability coverage under coverage A and B from products liability claims only where the primary policy provided coverage:

> IT IS AGREED THAT THIS POLICY DOES NOT APPLY
> UNDER COVERAGE A AND B, EXCEPT INSOFAR AS
> COVERAGE IS AVAILABLE TO THE INSURED UNDER
> PRIMARY POLICIES, TO OCCURRENCE ARISING OUT OF

THE PRODUCTS, HAZARDS OR THE COMPLETED
OPERATIONS HAZARDS AS DEFINED IN THIS POLICY.

62.     As a result, the 1982-83 American First-Layer Umbrella Policy provides

the same coverages as the underlying 1982-83 Columbia Casualty Primary Policy.

63.     American contends that as a result of the "follow form" nature of the

1982-83 American First-Layer Umbrella Policy, the 1981-82 Columbia Casualty Primary

Policy's purported asbestosis exclusion was incorporated by reference into the 1982-83 American

First-Layer Umbrella Policy.

64.     The Underlying Actions aver claims and occurrences that are within the

scope of the coverage provided by the 1982-83 American First-Layer Umbrella Policy.

**The Columbia Casualty Second-Layer Excess Policies**

**The 1981-82 Columbia Casualty Second-Layer Excess Policy**

65.     Prior to April 1, 1981, AstenJohnson purchased a second-layer excess

liability insurance policy from Columbia Casualty, Columbia Casualty Excess Umbrella

Liability Policy No. RDX 417-02-07, which provided one year of insurance coverage for the

period between April 1, 1981 and April 1, 1982 (the "1981-82 Columbia Casualty Second-Layer

Excess Policy," a copy of which is attached as Exhibit "5" hereto).

66.     The 1981-82 Columbia Casualty Second-Layer Excess Policy was the

second-layer excess policy over the 1981-82 American First-Layer Umbrella Policy and the

1981-82 Columbia Casualty Primary Policy, having policy periods from April 1, 1981 until April

1, 1982.

67.     The 1981-82 Columbia Casualty Second-Layer Excess Policy provided $10 million in per occurrence and aggregate liability limits in excess over the first-layer umbrella policy limits ($10 million per occurrence and in the aggregate) and over the primary policy limits ($1 million per occurrence and $1 million in the aggregate).

68.     The 1981-82 Columbia Casualty Second-Layer Excess Policy was a "follow form" insurance policy meaning that it provided insurance coverage in circumstances where the 1981-82 American First-Layer Umbrella Policy provided coverage:

> The company agrees with the named insured … To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance … provided.
>
> The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, any "other insurance" provisions and any other provisions therein which are inconsistent with the provisions of this policy.

69.     The 1981-82 Columbia Casualty Second-Layer Excess Policy defined "loss" as the "sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable" and to exclude "investigation, adjustment, defense or appeal costs and expenses."

70.     The 1981-82 Columbia Casualty Second-Layer Excess Policy defined "immediate underlying policy" at the "policy of underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy."

71.     As a result of the "follow form" nature of the insurance coverage, the 1981-82 Columbia Casualty Second-Layer Excess Policy provided the same insurance coverage as the underlying 1981-82 American First-Layer Umbrella Policy.

72.     If the 1981-82 American First-Layer Umbrella Policy provided insurance coverage for particular third-party liabilities, such as liabilities of AstenJohnson for the Underlying Actions, the 1981-82 Columbia Casualty Second-Layer Excess Policy would provide insurance coverage upon exhaustion of the underlying limits of both the 1981-82 Columbia Casualty Primary Policy and the 1981-82 American First-Layer Umbrella Policy.

73.     Pursuant to the terms of the 1981-82 Columbia Casualty Second-Layer Excess Policy, Columbia Casualty had certain defense obligations, promising to participate in the defense of Underlying Actions likely to involve the policy:

> Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company … as soon as practicable.  The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

74.     The defense obligations imposed by the 1981-82 Columbia Casualty Second-Layer Excess Policy required Columbia Casualty to provide and pay for AstenJohnson's defense to claims in addition to and outside of the indemnity limits mentioned in paragraph 67 above.

75.     The 1981-82 Columbia Casualty Second-Layer Excess Policy contained a purported asbestosis exclusion:

> It is agreed that this policy does not apply to any claim alleging an exposure to or the contracting of asbestosis or any liability

resulting therefrom.

76.     The Underlying Actions aver claims and occurrences that are within the scope of the coverage provided by the 1981-82 Columbia Casualty Second-Layer Excess Policy.

### The 1982-83 Columbia Casualty Second-Layer Excess Policy

77.     Prior to April 1, 1982, AstenJohnson renewed its second-layer excess policy with Columbia, purchasing a second-layer excess liability insurance policy from Columbia Casualty, Columbia Casualty Excess Umbrella Liability Policy No. RDX 917 61 20, which provided eighteen months of insurance coverage for the period between April 1, 1982 and October 1, 1983 (the "1982-83 Columbia Casualty Second-Layer Excess Policy," a copy of which is attached as Exhibit "6" hereto).

78.     The 1982-83 Columbia Casualty Second-Layer Excess Policy was the second-layer excess policy over the 1982-83 American First-Layer Umbrella Policy and the 1982-83 Columbia Casualty Primary Policy, having policy periods from April 1, 1982 until October 1, 1983.

79.     The 1982-83 Columbia Casualty Second-Layer Excess Policy was a "follow form" insurance policy meaning that it provided insurance coverage in circumstances where the 1982-83 American First-Layer Umbrella Policy provided coverage:

> The company agrees with the named insured … To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance … provided.
>
> The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, any "other insurance" provisions and any other provisions therein which are inconsistent with the provisions of

this policy.

80.     The 1982-83 Columbia Casualty Second-Layer Excess Policy defined "loss" as the "sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable" and to exclude "investigation, adjustment, defense or appeal costs and expenses."

81.     The 1982-83 Columbia Casualty Second-Layer Excess Policy defined "immediate underlying policy" at the "policy of underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy."

82.     The 1982-83 Columbia Casualty Second-Layer Excess Policy provided $10 million in per occurrence and aggregate liability limits in excess over the first-layer umbrella policy limits (annual indemnity limits of $10 million per occurrence and in the aggregate) and over the primary policy limits ($1 million per occurrence and $1 million in the aggregate).

83.     As a result of the "follow form" nature of insurance, the 1982-83 Columbia Casualty Second-Layer Excess Policy provided for annualized aggregate indemnity limits, meaning that for each annual period it provided indemnity limits of $10 million, as was provided in the 1982-83 American First-Layer Umbrella Policy.

84.     As a result of the annualized aggregate indemnity limits, the 1982-83 Columbia Casualty Second-Layer Excess Policy provides $10 million in aggregate indemnity limits for the period of April 1, 1982 until April 1, 1983, and an additional $10 million in aggregate indemnity limits for the period of April 1, 1983 until October 1, 1983.

85.     As a result of the "follow form" nature of the insurance coverage, the 1982-83 Columbia Casualty Second-Layer Excess Policy provided the same insurance coverage as the underlying 1982-83 American First-Layer Umbrella Policy.

86.     If the 1982-83 American First-Layer Umbrella Policy provided insurance coverage for particular third-party liabilities, such as liabilities of AstenJohnson for the Underlying Actions, the 1982-83 Columbia Casualty Second-Layer Excess Policy would provide insurance coverage upon exhaustion of the underlying limits of both the1982-83 Columbia Casualty Primary Policy and the annualized underlying limits of the 1982-83 American First-Layer Umbrella Policy.

87.     Pursuant to the terms of the1982-83 Columbia Casualty Second-Layer Excess Policy, Columbia Casualty had certain defense obligations, promising to participate in the defense of Underlying Actions likely to involve the policy:

> Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company … as soon as practicable.  The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

88.     The defense obligations imposed by the 1982-83 Columbia Casualty Second-Layer Excess Policy required Columbia Casualty to provide and pay for AstenJohnson's defense to claims in addition to and outside of the indemnity limits mentioned in paragraphs 82-84 above.

89.     The 1982-83 Columbia Casualty Second-Layer Excess Policy contained a purported asbestosis exclusion:

It is agreed that this policy does not apply to any claim alleging an exposure to or the contracting of asbestosis or any liability resulting therefrom.

90.     The Underlying Actions aver claims and occurrences that are within the scope of the coverage provided by the 1982-83 Columbia Casualty Second-Layer Excess Policy.

## The American Third-Layer Excess Policy

### The 1982-83 American Third-Layer Excess Policy

91.     Prior to April 1, 1982, AstenJohnson purchased a third-layer excess liability insurance policy from American, purchasing American Blanket Excess Liability Policy No. 0-82 XLX 148 11 21, which provided eighteen months of insurance coverage for the period between April 1, 1982 and October 1, 1983 (the "1982-83 American Third-Layer Excess Policy," a copy of which is attached as Exhibit "7" hereto).

92.     The 1982-83 American Third-Layer Excess Policy was a third-layer excess policy over the1982-83 Columbia Casualty Second-Layer Excess Policy, the 1982-83 American First-Layer Umbrella Policy, and 1982-83 Columbia Casualty Primary Policy, having policy periods from April 1, 1982 until October 1, 1983.

93.     The 1982-83 American Third-Layer Excess Policy provided indemnity limits of $10 million per occurrence and in the aggregate in excess over the first and second-layer liability limits (annual indemnity limits of $20 million per occurrence and in the aggregate) and over the primary policy limits ($1 million per occurrence and in the aggregate).

94.     The 1982-83 American Third-Layer Excess Policy provided for annualized indemnity limits, meaning that for each annual period it provided indemnity limits of $10 million:

> Subject to the applicable limit of liability as respects each
> occurrence, the limit of liability stated in the declarations [$10
> million] as "aggregate" shall be the total limit of this Company's
> liability for all damages sustained during each annual period of this
> policy

95.     As a result of the annualized indemnity limits, the 1982-83 American Third-Layer Excess Policy provides $10 million in aggregate limits for the period of April 1, 1982 until April 1, 1983, and an additional $10 million in aggregate limits for the period of April 1, 1983 until October 1, 1983.

96.     The 1982-83 American Third-Layer Excess Policy was a "follow form" insurance policy, meaning that it provided excess liability coverage if the 1982-83 American First-Layer Umbrella Policy provided coverage:

> The Company … agrees with the insured … To indemnify the
> Insured for the Insured's ultimate net loss in excess of the
> insurance afforded under the Blanket Excess Liability or
> "Umbrella" policies specified in item 7 of the Declarations,
> hereafter called underlying insurance.
>
> *       *       *
>
> The insurance afforded by this policy is subject to the same
> warranties, terms, … conditions and exclusions as are contained in
> the underlying insurance on the effective date of this policy, unless
> otherwise specifically provided in this policy

97.     The 1982-83 American Third-Layer Excess Policy defined "ultimate net loss" as "all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy."

98.     The 1982-83 American Third-Layer Excess Policy was a third-layer excess policy, meaning it provided insurance coverage after the limits of the primary, first-layer, and second-layer were exhausted.

99.     As a result of the "follow form" nature of the insurance, the 1982-83 American Third-Layer Excess Policy provided the same insurance coverage as is afforded in the underlying 1982-83 Columbia Casualty Second-Layer Excess Policy, the 1982-83 American First-Layer Umbrella Policy, and 1982-83 Columbia Casualty Primary Policy.

100.    Pursuant to the terms of the 1982-83 American Third-Layer Excess Policy, American agreed to indemnify AstenJohnson for all sums AstenJohnson would become legally obligated to pay as damages in excess of the primary policy limits or the retained limit as a result of an "occurrence" causing "personal injury" liabilities, such as was alleged in the Underlying Actions:

> THE COMPANY … Agrees with the insured … To pay on behalf of the insured all sums which the insured shall become obligated to pay as damages by reason of liability imposed on the insured by law or assumed by the insured under contract on account of … bodily injury, sickness, or disease, shock, mental anguish or emotional upset.

101.    Pursuant to the terms of the 1982-83 American Third-Layer Excess Policy, American also had a duty to defend, promising to defend AstenJohnson in underlying actions where, among other things, the underlying insurance was exhausted or non-existent:

> The company shall assume charge of the settlement or defense of any claim or suit against the insured seeking damages on account of personal injury, property damage or advertising liability covered by this policy and to which no primary insurance applies or on account of exhaustion of the aggregate limits of liability of the primary policies.

102.    The defense obligations imposed by the 1982-83 American Third-Layer Excess Policy required American to provide and pay for AstenJohnson's defense to claims in addition to and outside of the indemnity limits mentioned in paragraphs 93-95 above.

103.    The 1982-83 American Third-Layer Excess Policy defined "personal injury" as, among other things, "bodily injury, sickness, or disease, shock, mental anguish or emotional upset."

104.    The 1982-83 American Third-Layer Excess Policy defined "occurrence" as an "accident including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured."

105.    The 1982-83 American Third-Layer Excess Policy defined "products hazard" as "personal injury or property damage arising out of the named insured's products or reliance upon a representation or warranty made at anytime with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."

106.    The 1982-83 American Third-Layer Excess Policy defined "named insured's products" as "goods or products manufactured, sold, handled or distributed by the named insured."

107.    American contends that as a result of the "follow form" nature of the 1982-83 American Third-Layer Excess Policy, the 1982-83 Columbia Casualty Primary Policy's purported asbestosis exclusion was incorporated by reference into the 1982-83 American Third-Layer Excess Policy.

108.    The Underlying Actions aver claims and occurrences that are within the scope of the coverage provided by the 1982-83 American Third-Layer Excess Policy.

## The Insurance Company Defendants' Obligations To AstenJohnson

109.    By operation of Pennsylvania law, and as a result of Columbia Casualty's and American's position as AstenJohnson's insurers, which, as stated above, included the assumption of responsibility, among other things, for the defense of certain third-party claims, Columbia Casualty and American are fiduciaries of AstenJohnson.

110.    In connection with their role as AstenJohnson's insurance companies, Columbia Casualty and American owe AstenJohnson a duty of good faith and fair dealing in all aspects of their dealings, such that AstenJohnson's interests are always placed ahead of their own interests.

111.    As a result of these duties, Columbia Casualty and American owe AstenJohnson a fiduciary duty to act at all times in AstenJohnson's best interests with undivided loyalty and fidelity.

112.    The 1981-82 Columbia Casualty Primary Policy, 1982-83 Columbia Casualty Primary Policy, 1981-82 American First-Layer Umbrella Policy, 1982-83 American First-Layer Umbrella, 1981-82 Columbia Casualty Second-Layer Excess Policy, 1982-83 Columbia Casualty Second-Layer Excess Policy, and 1982-83 American Third-Layer Excess Policy provide insurance coverage for the Underlying Actions, which requires each of the insurance company defendants to honor the foregoing obligations in all aspects of their dealings with AstenJohnson concerning the Underlying Actions.

## Exhaustion Of Limits Of Other Primary Insurance Policies

113.    Since being served with the first Underlying Action complaint, AstenJohnson submitted all of the Underlying Actions to other primary comprehensive general

liability insurance companies, including those companies that sold primary comprehensive general liability insurance policies for years prior to the years of coverage beginning with the 1981-82 Columbia Casualty Primary Policy.

114.    AstenJohnson's other primary general liability insurance companies initially refused to provide insurance coverage for the Underlying Actions, but subsequently provided defense and indemnity for all Underlying Actions.

115.    AstenJohnson's other primary general liability insurance companies have provided defense and indemnification for the Underlying Actions until the last one notified AstenJohnson of exhaustion of its primary policy limits on or about October, 2002.

## Denial Of Coverage Obligations

116.    In the fall of 2001, AstenJohnson was informed by its other primary general liability insurance companies of the imminent upcoming exhaustion of their policy limits.

117.    Thereafter, AstenJohnson placed Columbia Casualty and American on notice of the imminent exhaustion.

118.    AstenJohnson timely notified Columbia Casualty and American of the Underlying Actions and of the likely need for coverage under the foregoing insurance policies.

119.    Columbia Casualty has been tendered certain currently active Underlying Actions.

120.    Columbia Casualty has refused to provide insurance coverage for the Underlying Actions coverage under the foregoing insurance policies for the Underlying Actions, on the basis of the purported asbestosis exclusions.

121.    Although it has not refused to provide coverage for the Underlying Actions, American's policies "follow form" to the Columbia Casualty policies, and American has given no indication that it would take a coverage position different than that given by Columbia Casualty.

122.    Before actual exhaustion of the limits of the other primary policies, AstenJohnson met with representatives of the Columbia Casualty and American to discuss insurance coverage under these insurance company defendants' primary and first-layer umbrella liability insurance policies, hoping to achieve a smooth transition in the handling of the Underlying Action from the other primary insurance companies to Columbia Casualty, American, and others.

123.    As a result of Columbia Casualty's refusal to provide insurance coverage for the Underlying Actions, AstenJohnson has lost, to a certain extent, the organized claims handling procedure it had in place during the years preceding exhaustion of the other primary insurance policy limits.

124.    From the first notice of the other primary policy limit exhaustion, Columbia Casualty has continued either to ignore or unconditionally to agree to its coverage obligations for the Underlying Actions, and American has failed to acknowledge its obligations to AstenJohnson, thereby forcing AstenJohnson to initiate litigation to obtain insurance coverage under the foregoing insurance policies.

125.    As a result, Columbia Casualty is avoiding its coverage obligations under the foregoing insurance policies that it sold to AstenJohnson, and American has failed to acknowledge its coverage obligations to AstenJohnson.

126.    Columbia Casualty's conduct in refusing to provide insurance coverage and American's conduct in failing to acknowledge its coverage obligations is wrongful because the Underlying Actions include bodily injury claims by persons, which are covered by the terms of the foregoing insurance policies, and the purported asbestosis exclusions are unenforceable, ambiguous, invalid, inapplicable, and/or do not bar insurance coverage for the Underlying Actions.

127.    AstenJohnson has complied with all conditions precedent to receive coverage under the foregoing insurance policies.

128.    Columbia Casualty refuses to acknowledge its insurance coverage obligations and has breached the terms of the foregoing insurance policies.  If Columbia Casualty refuses to acknowledge their insurance coverage obligations, there will be further breaches of the terms of the foregoing insurance policies.

### Invalidity Of The Asbestosis Exclusion In Pennsylvania

129.    Under Pennsylvania insurance law, an insurance company cannot sell an insurance policy in the Commonwealth of Pennsylvania with language that has not been expressly approved by the Pennsylvania Insurance Department.

130.    If an insurance policy contains any language that has not been approved, the non-approved provisions are invalid and unenforceable.

131.    Prior to November 9, 1987, whenever an insurance company or its representative submitted for approval an asbestos-related exclusion for inclusion in commercial general liability insurance policies, it was the general policy of the Pennsylvania Insurance Department to disapprove such exclusions.

132.    The foregoing insurance policies were sold in 1981 and 1982, several years before the Pennsylvania Insurance Department approved any asbestos-related exclusion for use in comprehensive general liability insurance policies.

133.    Additionally, the Pennsylvania Insurance Department required that if a liability insurance policy contains an exclusion for asbestos, a disclosure notice requiring the policyholder's signature needed to be part of the exclusion and countersigned by the policyholder, in order to be enforceable.

134.    The purported asbestosis exclusions in the foregoing insurance policies contain no disclosure notices requiring AstenJohnson's signature.

135.    Signatures of representatives of AstenJohnson appear on none of the purported asbestosis exclusions of the foregoing insurance policies.

136.    Accordingly, the purported asbestosis exclusions in the foregoing insurance policies are invalid and unenforceable, and Columbia Casualty's reliance upon the purported asbestosis exclusions to deny insurance coverage for the Underlying Actions under the foregoing insurance policies is wrongful and in bad faith.

137.    Alternatively, even if the purported asbestosis exclusion in the foregoing policy were enforceable, it only excludes insurance coverage for Underlying Actions and claims involving solely the specific disease of asbestosis.

## COUNT I
### (Declaratory Judgment Versus All Defendants)

138.    AstenJohnson repeats and re-alleges the averments of paragraphs 1-137, as if the same were set forth at length herein.

139.    As set forth above, Columbia Casualty and American sold AstenJohnson the foregoing insurance policies covering, among other things, liabilities arising from asbestos-related bodily injury claims asserted against AstenJohnson, such as those asserted in the Underlying Actions.

140.    Columbia Casualty has breached and continues to breach its promises, as set forth in the foregoing insurance policies, by failing and/or refusing to honor its promises to defend, conduct settlement negotiations, and indemnify AstenJohnson for and in the Underlying Actions.

141.    American continues to fail to acknowledge its coverage obligations for the Underlying Actions under the foregoing insurance.

142.    As a direct and proximate result of the Columbia Casualty's breaches of contract and American's refusal acknowledge its coverage obligations, AstenJohnson has suffered and will continue to suffer serious harm in an amount in excess of $75,000, exclusive of interest and costs.

143.    An actual and justifiable controversy exists between AstenJohnson and Columbia Casualty and American regarding the interpretation, application, and meaning of the foregoing insurance policies.

144.    Accordingly, AstenJohnson is entitled to declaratory judgment of this Court of its rights and of the obligations of Columbia Casualty and American under the foregoing insurance policies.

145.    Declaratory relief from this Court will resolve all outstanding issues between AstenJohnson and Columbia Casualty and American regarding the obligations of Columbia Casualty and American under the foregoing insurance policies.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201-02, AstenJohnson seeks judgment in its favor as to Count I as follows:

(a)    The entry of an Order judicially declaring that the asbestosis exclusions in the foregoing insurance policies in invalid and unenforceable, and requiring Columbia Casualty and American to pay for AstenJohnson's defense of the Underlying Actions, outside of the foregoing insurance policies' indemnity limits, and to reimburse AstenJohnson for, or pay on behalf of AstenJohnson, any and all judgments or settlements reached in the Underlying Actions, until such time as the total aggregate limits of each of the foregoing insurance policies have been exhausted; and

(b)    The award of such additional relief as the Court deems just and appropriate.

## COUNT II
## (Breach of Contract Versus Columbia Casualty)

146.    AstenJohnson repeats and re-alleges the averments of paragraphs 1-145, as if the same were set forth at length herein.

147.    As set forth above, Columbia Casualty sold AstenJohnson the foregoing insurance policies covering, among other things, liabilities arising from asbestos-related bodily injury claims asserted against AstenJohnson, such as those asserted in the Underlying Actions.

148.    The Underlying Actions are covered by the foregoing insurance policies.

149.    The asbestosis exclusions in the foregoing insurance policies are invalid, unenforceable, and not applicable to the Underlying Actions.

150.    The Underlying Actions trigger Columbia Casualty's duties to defend and indemnify AstenJohnson, under the terms of the foregoing insurance policies.

151.    AstenJohnson has timely demanded that Columbia Casualty provide AstenJohnson with the insurance coverage it purchased under the foregoing insurance policies.

152.    Columbia Casualty has refused to honor all of its obligations to provide AstenJohnson with a defense or indemnification in and for the Underlying Actions, under the terms of the foregoing insurance policies.

153.    By reason of the foregoing, Columbia Casualty has breached its contractual obligations to AstenJohnson under the foregoing insurance policies.

154.    As a direct and proximate result of Columbia Casualty's breaches, AstenJohnson has suffered damages.

WHEREFORE, AstenJohnson seeks judgment in its favor as to Count II as follows:

(a)    The entry of an award requiring Columbia Casualty to pay AstenJohnson all monetary damages suffered by AstenJohnson caused by its breaches, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs; and

(b)    The award of such additional relief as the Court deems just and appropriate.

## COUNT III
### (Bad Faith In Violation of 42 Pa. Cons. Stat. § 8371 Versus Columbia Casualty)

155.    AstenJohnson repeats and re-alleges the averments of paragraphs 1-154, as if the same were set forth at length herein.

156.    Columbia Casualty's conduct as described above and set forth below constitutes bad faith actions prohibited by 42 Pa. Cons. Stat. § 8371.

157.    Moreover, Columbia Casualty has repeatedly violated and continues to violate the Pennsylvania Unfair Insurance Practices Act, 40 Pa. Cons. Stat. §§ 1171.1 et seq.

158.    Columbia Casualty's wrongful denial of coverage to AstenJohnson is part of an ongoing scheme to deprive policyholders like AstenJohnson of the insurance coverage provided to them under liability insurance policies sold by Columbia Casualty.

159.    Among other acts or failures to act, Columbia Casualty has acted in bad faith with respect to AstenJohnson by its:

a.      Failure to deal fairly with AstenJohnson and failure to give equal consideration in all matters to AstenJohnson's interests;

b.      Engagement in unreasonable, frivolous, or untenable denial of policy benefits to AstenJohnson;

c.      Misrepresentation of pertinent facts or policy provisions relating to coverages at issue;

d.      Asserting inconsistent positions regarding the meaning of its policy provisions and adopting the coverage-defeating interpretation as the correct one; and

e.      Compelling AstenJohnson to institute, continue, or submit to litigation to recover amounts due under the foregoing insurance policies by offering amounts far less than the amounts they know to be due and owing under the foregoing insurance policies.

160.    In all of the instances set forth above, Columbia Casualty's persistent and systematic actions and failures to act amount to bad faith conduct towards AstenJohnson.

161.    In all of the instances set forth above, Columbia Casualty's persistent and systematic actions and failures to act were done purposefully, intentionally, maliciously, and/or recklessly.

162.    As a result of Columbia Casualty's bad faith actions, AstenJohnson has suffered, and will continue to suffer, substantial damages.

163.    As a result, Columbia Casualty are liable for compensatory damages, consequential damages, interest, attorneys' fees and costs, and punitive damages pursuant to 42

Pa. Cons. Stat. Ann. §8371.

WHEREFORE, AstenJohnson seeks judgment in its favor as to Count III as follows:

(a)     The entry of an award requiring Columbia Casualty to pay AstenJohnson all monetary damages suffered by AstenJohnson caused by their breaches, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs;

(b)     The award of punitive damages; and

(c)     The award of such additional relief as the Court deems just and appropriate.

## COUNT IV
### (Breach of Fiduciary Duty Versus Columbia Casualty)

164.     AstenJohnson repeats and re-alleges the averments of paragraphs 1-163, as if the same were set forth at length herein.

165.     Through the defense and indemnity provisions contained in the foregoing insurance policies and Pennsylvania law, Columbia Casualty owes fiduciary duties towards AstenJohnson, which obligates Columbia Casualty to act reasonably, in good faith, and with due care in interpreting, administering and resolving all policy issues involving AstenJohnson.

166.     Columbia Casualty has breached its fiduciary duties owed to AstenJohnson, by failing and refusing unreasonably to acknowledge its obligations to AstenJohnson under the foregoing insurance policies and asserting positions that are contrary to the policy provisions and Pennsylvania law.

167.    As a result of Columbia Casualty's breaches of its fiduciary duties, AstenJohnson has suffered and continues to suffer serious damages.

WHEREFORE, AstenJohnson seeks judgment in its favor as to Count IV as follows:

(a)    The entry of an award requiring Columbia Casualty to pay AstenJohnson all monetary damages suffered by AstenJohnson caused by their breaches, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs; and

(b)    The award of such additional relief as the Court deems just and appropriate.


Dated: March 13, 2003            By:  _____

John N. Ellison (I.D. No. 51098)
Robert E. Frankel (I.D. No. 67962)

Anderson Kill & Olick, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: 215-568-4202

Attorneys for Plaintiff AstenJohnson, Inc.