# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASTENJOHNSON, INC.,** | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : NO. 03- 1552 |
| **COLUMBIA CASUALTY COMPANY et al.** | : |
| Defendants. | : |

**REPLY BRIEF IN FURTHER SUPPORT OF AMERICAN INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT DECLARING THAT ALL ASBESTOS-RELATED CLAIMS AGAINST ASTENJOHNSON, INC. ARISE FROM A SINGLE OCCURRENCE AND THAT ONLY A SINGLE PER-OCCURRENCE LIMIT APPLIES TO THE 1982 AMERICAN POLICIES**

American seeks partial summary judgment on the discrete ground that, because all of the asbestos-related claims against AstenJohnson arise from a single occurrence – AstenJohnson's decision to manufacture dryer felts containing asbestos – only a single $10 million "per occurrence" limit could potentially be available under the 1982 American Umbrella and Excess Polices. American does not dispute that there would be a fact issue as to whether a separate set of *aggregate* limits is available for the final 6 months of those two policies, but it becomes unnecessary to adjudicate this issue if the Court agrees with American on the single occurrence issue. Indeed, because there is but a single per occurrence limit available under these policies, the aggregate limit issue is moot and does not even present a justiciable "case or controversy."

Try as it might, AstenJohnson cannot circumvent the inevitable result of applying Pennsylvania law, as articulated in *Treesdale*, *Baumhammers*, and *Greene Tweed*, to the unambiguous terms of the 1982 American Umbrella and Excess Policies. Indeed, none of its arguments present any genuine issues of material fact sufficient to warrant denying American's motion.

First, AstenJohnson's argument (at 7-8) that every work site where its dryer felts were used could constitute a separate "occurrence" is simply wrong given that AstenJohnson was a manufacturer of asbestos-containing products, not an installer of asbestos-containing products manufactured by others. Indeed, the *Greene Tweed* court recognized this very distinction in rejecting Greene Tweed's similar argument in that case:

> Unlike Greene Tweed, Kvaerner's liability was premised on an allegation of negligent construction of furnaces at different work sites where asbestos products manufactured by others were used by Kvaerner to construct the furnaces. The claims against Kvaerner did not arise, as in Greene Tweed, from the manufacturing or selling of products containing asbestos. Thus, the circumstances in Greene Tweed's case are more akin to those in *Treesdale* than in *Kvaerner*, and this court is bound to follow the Third Circuit's interpretation of Pennsylvania law. Accordingly, this court rejects Greene Tweed's argument that there was more than one occurrence as the result of its manufacture and sale of asbestos-containing products. Instead, the court finds that the manufacture and/or sale of asbestos-containing products constitutes a single occurrence for purposes of the limits of liability in the American Home and Allstate Policies.

*Greene, Tweed & Co. v. Hartford Accident and Indem.* Co., 2006 WL 1050110, *8 (E.D. Pa. April 21, 2006). Here as well, since AstenJohnson does not suggest, much less proffer any evidence, that its asbestos liabilities arise from anything other than its manufacture and sale of asbestos-containing products, there is no question that *Treesdale* compels the conclusion that its liabilities arise from a single occurrence.

Second, AstenJohnson contends (at 2, 7-8) that there could be more than one occurrence due to its being sued on the basis of conspiracy claims arising from its membership in the Asbestos Textiles Institute ("ATI"). But this argument is a complete red herring because all such claims are expressly precluded by the second, undisputed sentence of the "Asbestosis Exclusion" at issue in this case: "It is further agreed that this policy does not apply to any claim arising out of the Insured's membership in the Asbestos Textile Institute." Since ATI claims are excluded,

2

the fact remains that any arguably-covered asbestos related claims are those brought against AstenJohnson for its role in manufacturing and selling asbestos-containing products, which as *Treesdale* teaches arise from but a single occurrence.

Third, contrary to AstenJohnson's contention (at 3, 9), the differential in premiums between the 12-month 1981 American Umbrella Policy and the 18-month 1982 American Umbrella Policy does not create any material factual dispute as to whether the per occurrence limit of the 1982 American Umbrella Policy was renewed for the last six months of that policy period. The fact that a higher premium was charged for an 18-month policy than for a 12-month policy is in no sense probative of this issue. Indeed, in *Millers Capital Insurance Co. v. Gambone Brothers Development Co.*, 941 A.2d 706 (Pa. Super. 2007), the Pennsylvania Superior Court rejected just such an effort to import latent ambiguity into an otherwise unambiguous policy provision on the basis of the premium charged. That court stated:

> Gambone also attempts to demonstrate latent ambiguity by arguing the trial court erred by refusing to consider the amount of premium it paid for products-completed operations hazard coverage.… Gambone's argument holds little persuasive value. Gambone invites this Court to comb through the various insurance policies, calculate what premiums were paid for specific grants of coverage, and then compare these calculations to discern whether it paid an amount which could lead us to believe it intended to purchase coverage for damages caused by the faulty workmanship of subcontractors.
>
> The problem with Gambone's request is apparent; it has given us no framework within which to conduct such an inquiry. … We have no idea what the prevailing market rates are for completed operations coverage riders which do not insure against faulty workmanship. Even if evidence in the certified record demonstrated Millers charges a high premium for such coverage, we have no idea whether Millers offers services that other insurers do not, such that the higher premium charged would be justified. Thus, we must decline Gambone's invitation.

*Id*. at 714.  Here, too, AstenJohnson provides "no framework within which to conduct such an inquiry," nor any evidence to suggest that a higher premium was paid for the 18-month policies in return for annualization of the 1982 Policies' per occurrence limits, and the plain language of the policies does not support such a claim.

 Fourth, the Third Circuit did not find material fact issues to exist on the number of occurrences issue or on the issue of whether the per occurrence limits of the 1982 Polices were annualized, as AstenJohnson incorrectly argues (at 2-3, 8-9).  To the contrary, like this Court, the Third Circuit considered and ruled only on the issue of whether the *aggregate* limits are annualized, and found disputed issues on fact only on *that* issue, as that court's opinion makes clear.  *See* 562 F.3d 213, 229 n.9 (referencing "Asten's declaratory judgment claim regarding the aggregate liability limit under American's 1982 Umbrella and Excess Liability Policies" and ruling that "it is not clear at this point that this issue should be resolved without the assistance of a jury.").  Likewise, a review of the excerpts of the testimony of American's Rule 30(b)(6) designee Jerry Leddy submitted in conjunction with AstenJohnson's opposition (Ex. B) makes clear that Mr. Leddy's testimony concerned solely the issue of whether the *aggregate* limits of the 1982 Policies, not their "per occurrence" limits, were renewed for the final six months of those policies.  Accordingly, this issue has yet to be considered by either this Court or the Third Circuit and is ripe for determination now.

 Fifth, there is no difference in policy language to justify Asten's attempt (at 9-11) to distinguish *Greene Tweede* and the numerous cases cited therein.  American's policies clearly provide that there are separate "per occurrence" and "aggregate" policy limits.  The only annualization language found in American's policies are in a section that references solely the "aggregate" limits.  There is nothing in either policy that even suggests any intent to annualize the "per occurrence" limits.

4

For all the foregoing reasons, and the reasons set forth in American's Opening Brief, this Court should grant American's motion for partial summary judgment and declare that any asbestos-related claims arising out of AstenJohnson's liability constitutes one "occurrence" as a matter of Pennsylvania law, and that the most that could possibly be available to pay for asbestos-related claims under the 1982 American Umbrella and Excess Policies is the single, non-annualized, $10 million aggregate "per occurrence" limit of each policy.

Respectfully submitted,

**COZEN O'CONNOR**

By: /s/ Jacob C. Cohn
William P. Shelley
Jacob C. Cohn
1900 Market Street
Philadelphia, PA 19103
(215) 665 – 2000

**KOCH & DeMARCO, LLP**

Susan Simpson Brown
KOCH & DeMARCO
Jenkintown Plaza, Suite 460
Jenkintown, Pennsylvania 19046
(215) 881-9931

Attorneys for Defendant, American Insurance Company

Dated: July 7, 2010