**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ASTENJOHNSON, INC., | Civil Action No. 03-1552 |
| Plaintiff, | |
| v. | |
| COLUMBIA CASUALTY COMPANY, and AMERICAN INSURANCE COMPANY, | |
| Defendants. | |

## PLAINTIFF'S PRETRIAL MEMORANDUM

Plaintiff, AstenJohnson, Inc. ("AJN") by and through the undersigned counsel, submits this Pretrial Memorandum.

**I.      PARTIES**

AJN is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 4399 Corporate Road, Charleston, South Carolina.  AJN is the successor-in-interest to all of the entities listed as named insureds in the insurance policies discussed herein.

Defendant American Insurance Company ("American") is an insurance company organized and existing under the laws of the State of Nebraska with its principal place of business at 777 San Marin Drive, Novato, California  94998.  At all times relevant hereto,

American is and was licensed to transact business in the Commonwealth of Pennsylvania, and American does and did transact business in the Commonwealth of Pennsylvania.[1]

## II.    JURISDICTION AND VENUE

The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this action occurred in this District, and American resides in this District.

## III.    THE NATURE OF PLAINTIFF'S CLAIMS

This is an action for declaratory judgment arising out of American's refusal to acknowledge its contractual obligation under liability insurance policies that it sold to AJN.

## IV.    SUMMARY OF FACTS

AJN seeks a declaratory judgment against American regarding American's obligations to provide indemnification and defense coverage for asbestos-related claims pursuant to two umbrella policies and one excess commercial general liability policy that it sold to AJN. (Trial Exs. AMER30, AMER64, AMER53).  American's refusal to provide coverage hinges on the applicability of the "Asbestosis Exclusion."  While AJN has the initial burden of showing the existence of the policies and prima facie coverage, once AJN has met its burden, then the burden

---

[1]As AJN has entered into a settlement in principle with Defendant Columbia Casualty Company ("Columbia"), AJN does not include that defendant here.

shifts to American "to demonstrate that an exclusion places the particular harm outside of the

policy's reach." <u>Devcon Int'l Corp. v. Reliance Ins. Co.</u>, 609 F.3d 214, 218 (3d Cir. 2010)

(citing <u>State Farm Fire & Cas. Co. v Estate of Mehlman</u>, 589 F.3d 105, 110 (3d Cir. 2009)).

 

     The Third Circuit ruled that the Asbestosis Exclusion at issue is ambiguous.

<u>AstenJohnson Inc. v. Columbia Cas. Co.</u>, 562 F.3d 213 (3d Cir. 2009).  The Exclusion states:

### ASBESTOSIS EXCLUSION

> It is agreed that this policy does not apply to claims alleging an exposure to or the
> contracting of asbestosis or any liability resulting there from.

> It is further agreed that this policy does not apply to any claim arising out of the
> insured's membership in the Asbestos Textile Institute.

(Trial Exs. CCC277, CCC229).[2]

     Exclusions or endorsements that deny coverage are "strictly construed against the

insurer."  <u>Devcon Int'l Corp.</u> 609 F.3d 214, 218 (citing <u>Nationwide Mut. Ins. Co. v. Cosenza</u>,

258 F.3d 197, 206-07 (3d Cir. 2001)).  As such, the exclusion must unambiguously exclude

coverage.  <u>Lucker Mfg. v. Home Ins. Co.</u>, 23 F.3d 808, 814 (3d Cir. 1994).

     American claims that the Asbestosis Exclusion applies to all asbestos-related diseases,

including mesothelioma and lung cancer, and that it is incorporated into the American policies

pursuant to a Follow Form Product Liability Endorsements.  AJN contends that the Asbestosis

Exclusion applies only to claims relating to the disease asbestosis and claims arising out of

AJN's membership in the Asbestos Textile Institute.  In addition, the Follow Form Product

Liability Endorsements upon which American relies are unsigned forms, contain no policy

information and are not dated.  As such, before it even can even argue over the meaning of the

---

[2] It is undisputed that the first sentence of the Exclusion was form language drafted by Columbia long
before it was inserted in the AJN policies and without any input from AJN.

Asbestosis Exclusion, American will have the burden of establishing that the Follow Form

Product Liability Endorsements are part of the AJN Policies and establish the effective date of

the Endorsements.  As for the Asbestosis Exclusion, American has the burden of establishing

that the Exclusion unambiguously excludes claims relating to all asbestos-related diseases,

including mesothelioma and lung cancer claims.  If American is unable to meet its burdens, the

ambiguity in this exclusion must be interpreted in favor of coverage as a matter of Pennsylvania

law.  Med. Protective Co. v. Watkins DDS, 198 F.3d 100, 103 (3d Cir. 1999) (citing Standard

Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300 (Pa. 1983)).

While American has its underwriting file, those records show that for the policies at

issue, American simply renewed the coverage it had provided to AJN for the prior two years –

coverage that did not contain an asbestos bodily injury exclusion.  When it sold the policies at

issue, American did not know that the underlying Columbia policies contained the Asbestosis

Exclusion, and did not underwrite the policies based upon a belief that all asbestos-related claims

would be excluded.  As such, American can offer no evidence that it intended the Asbestosis

Exclusion to exclude all asbestos-related claims or that it agreed to sell the policies based upon

such an intent.

In the decades subsequent to the sale of the policies, American never mentioned the

Asbestosis Exclusion as limiting coverage.  In numerous letters from American to AJN

beginning in the mid-1980 relating to pending asbestos claims, at least three American claims

handlers specifically noted that the policies at issue "may be involved" in providing coverage.

(See e.g. AMER402-AMER406, AMER422, AMER423, AMER436, AMER437).

While in hindsight, and given the explosion of asbestos-related claims, it may seem

illogical to think that an underwriter would exclude only a single asbestos-related disease,

American's own files show that when used in exclusions, insurers at that time actually intended the term asbestosis to mean the single disease.  By way of example, Fireman's Fund Insurance Company, of which American is part of, wrote policies in 1983 and 1984 that excluded "claims arising out of asbestosis or silicosis," which was recently found to exclude just those two specific diseases. See March 11, 2009 Order in Asarco, LLC v. Firemen's Fund Ins. Co., No. 01-2680-D, (granting Plaintiffs' Motion for Partial Summary Judgment on FFIC's asbestosis/silicosis exclusion).  American and Columbia, along with others in the insurance industry, consistently used the word "asbestosis" to refer to the single disease by that name, not as a synonym for all asbestos-related diseases.

Probably the best evidence that American did not intend the Asbestosis Exclusion to exclude all asbestos-related disease is that for the 1984 renewal with AJN, American insisted upon an exclusion that states that the policy "does not apply to direct or indirect liability arising out of asbestos." (AMER0071).  Had American believed that the Asbestosis Exclusion was as broad as it now contends, there would have been no need to insist upon different language for the 1984 renewal.

Also at issue is whether American's 4/1/82 – 10/1/83 Umbrella and Excess Policies provide $10 Million in limits for one 12-month period and separate $10 Million in limits for one six-month period.  American's corporate designee agreed that under the applicable language of the American Umbrella Policies, the limits renew for the six-month period.

## V.    DAMAGES

At the upcoming trial, AJN seeks a declaratory judgment, plus costs and fees as this Court deems appropriate, regarding American's obligations pursuant to two umbrella policies and one excess liability policy.

**VI.**     **DAYS REQUIRED FOR TRIAL**

AJN estimates that it will need two to three days for its case-in-chief.  Based on AJN's understanding of American's intended opposition, AJN expects that the trial should require no more than two weeks.

**VII.**    **STIPULATIONS OF COUNSEL**

Attached as Exhibit A is a Proposed Stipulation of Undisputed Facts.  This proposed stipulation sets forth facts that AJN believes to be undisputed and that, if stipulated, would expedite and simplify the presentation of evidence at trial.  AJN hopes and expects that an agreement will be reached with American before trial as to some or all of the facts sets forth therein.

**VIII.**   **WITNESSES**

AJN anticipates that it will call the following individuals as witnesses at trial, either live or by deposition, in either its direct case or on rebuttal:

1.     William Finn

2.     James Young, Esq.

3.     James Gibson, Esq.

4.     Gloria D. Forbes

5.     Jerry Leddy

6.     Laurence Krupnick

AJN also expects to cross-examine all of the witnesses that American calls in its case-in-chief.  Depending upon events at trial, AJN may call additional witnesses in its rebuttal case who are not identified above, including its expert, Dennis Connolly.[3]

AJN's Trial Exhibit List is attached hereto as Exhibit B.  In addition, AJN expects to introduce exhibits that were previously listed on the Trial Exhibit Lists of Columbia (Docket No. 207) and American (Docket No. 208-2), which are attached as Exhibits C and D, respectively.

IX.    **OBJECTIONS TO DEFENDANT'S EVIDENCE**

As a threshold matter, AJN takes the position that all parties should be precluded from informing the jury, either directly or indirectly, that this action was tried previously.  Such information is likely to provoke speculation by the jury about why the case is being tried again and about what the outcome was before.  AJN submits that such speculation would be distracting, unnecessary and prejudicial.

AJN objects to any effort by American to identify documents generated or received by entities other than AJN as being AJN's documents.  As an example, AJN objects to any effort by American to identify documents generated by insurance intermediaries, such as Babb Inc., Delaware Valley Underwriting Agency, Inc., Gloria D. Forbes and/or Stanley Blaustein, as having been generated by AJN.  Doing so would contravene agent/principal laws regarding when imputation is permissible, as recently articulated in Official Comm. of Unsecured Creditors of Allegheny Health Educ. and Research Found. v. PriceWaterhouseCoopers, LLP, 989 A.2d 313, 333-39 (Pa. 2010); see also Plaintiff's Memorandum of Law Submitted in Opposition to

---

[3] On May 28, 2010, AJN filed a Motion for Leave To Update and/or Supplement Plaintiff AstenJohnson Inc.'s Trial Exhibit List and Expert Reports [Docket No. 341], requesting permission to submit new or supplemental expert reports.  In the event that the Court grants that motion, plaintiff will make new expert witness[es] immediately available for pre-trial deposition and will add them to this list.

Defendant Columbia Casualty Co.'s Motion for Summary Judgment [Docket No. 357].  AJN has no objection to the admissibility of such documents if they are authenticated and introduced as having been generated by the entities that generated them.

AJN objects to any effort by American to offer opinion testimony by lay witnesses in violation of Section II.I.20 of this Court's Policies & Procedures, which states:

> Any party expecting to offer lay opinion testimony pursuant to Federal Rule of Evidence 701 regarding issues of liability or damages shall provide the opposing parties with information or documents supporting the testimony at the time required for submission of expert reports.

As an example, AJN submits that American should be barred from eliciting lay opinion testimony from Gloria Forbes about the meaning or understanding of brokers, policyholders, underwriters and/or others in the early 1980s about asbestos, asbestosis, asbestos-related exclusions or related matters.  Such testimony is inadmissible because Ms. Forbes has never been identified as a lay witness who will offer opinion testimony, in accordance with the procedures set forth above.  Ms. Forbes is not qualified to offer opinion testimony, as she was relatively new to the insurance business in the early 1980s.  She was not a Certified Property Casualty Underwriter and she may not have even had a broker's license.  (Forbes Dep. Tr., June 28, 2004, at 117-18).  She was a service representative, principally responsible for servicing accounts after insurance policies already were placed.  (Id. at 21:21-22:10; 33:14-34:13; 117:18-18:15).  In fact, she freely admits that her work was done principally in the office and her contacts with policyholders were very limited.  (Id.).  Thus, Ms. Forbes' testimony should be limited to matters that she handled personally and that she is able to recall.  AJN further submits that American should be barred from representing to the jury that the testimony of Gloria Forbes is the testimony of anyone but herself.

To the extent that American seeks to offer opinion testimony from any other lay witnesses, AJN will assert the same objection.

AJN seeks to potentially submit on cross-examination and/or rebuttal the deposition testimony of Columbia underwriter David Sayles, taken in another action.  Mr. Sayles, the underwriter for the 1981 Columbia Policies, was deposed in the consolidation of two asbestosis exclusion cases involving Columbia, Carey Canada v. California Ins. Co., No. 83-1105 (D. D.C.) ("Carey Canada"), and Celotex v. California Ins. Co., No. 86-1142 (D.D.C.) ("Celotex") (collectively "Carey Canada/Celotex").[4]  Although AJN recognizes that this Court precluded the use of this transcript in the first trial [Docket No. 253], AJN submits that the circumstances have changed.  AJN does not expect American to call Mr. Sayles to testify as a live witness at this trial.  The testimony from Carey-Canada/Celotex directly impeaches testimony given by Mr. Sayles at that deposition.  Columbia, however, did not produce the Carey-Canada transcript to AJN until after Mr. Sayles' deposition was completed.  Thus, AJN did not have the opportunity to impeach Mr. Sayles at that deposition with his prior testimony.

AJN expects to offer this transcript as impeachment on only one point: that Mr. Sayles was aware, as early as 1979, that there were multiple asbestos-related diseases other than asbestosis.  He testified to the contrary at his deposition in this case, saying that he thought asbestosis was the only disease that arose from asbestos exposure and that, by excluding asbestosis, he therefore was excluding all asbestos-related diseases.  It would be entirely

---

[4] As in this case, the principal issue in Carey-Canada/Celotex was whether an asbestosis exclusion barred coverage for all asbestos-related diseases or whether it was limited to the disease of asbestosis.  There, Mr. Sayles testified as an underwriter at Columbia and was represented at his deposition by coverage counsel for Columbia.  Columbia, like American in this matter, had the incentive at his deposition, and at trial, of attempting to prove that the exclusion barred coverage for all asbestos-related diseases.  See Carey Canada v. California Union, 720 F. Supp. 1018, 1022 (D. D.C.), rev'd, 940 F.2d 1548 (D.C. Cir. 1991); Celotex v. California Ins. Co., 175 B.R. 98 (M.D. Fl. 1994).

appropriate to allow AJN to impeach such testimony with Mr. Sayles' contrary testimony in
Carey-Canada/Celotex and then allow the jury to decide which testimony it believes.

To the extent that American identifies any new exhibits on the exhibit lists that
accompany its Pretrial Memoranda, AJN reserves the right to assert objection on grounds of
authenticity and admissibility.  Further, AJN reserves the right to assert such objections at trial,
to the extent that the exhibits are presented in a manner that gives rise to such objections.

**X.**     **DEPOSITION TESTIMONY**

AJN intends to offer the deposition testimony of Laurence Krupnick and American
employee Jerry Leddy during its case-in-chief.  Deposition designations are attached as Exhibit
E.  To the extent that American identifies witnesses that it intends to offer by deposition during
its case-in-chief, AJN will promptly submit counter-designations**.**

**XI.**    **ADDITIONAL ISSUES**

During the first trial, American asserted a claim for rescission based upon alleged
misrepresentations made by AJN as to the scope of the underlying Columbia Primary Policies.
This Court ruled against American as to its rescission claim, and American did not appeal that
ruling.  If American were to attempt to re-assert its rescission defense, AJN would oppose such
an effort based upon the "law of the case" doctrine and American's failure to appeal the Court's
prior ruling.

In addition, the following motions are still pending:

- AJN's Motion Leave to Update and/or Supplement Plaintiff Asten Johnson, Inc.'s
  Trial Exhibit List and Expert Reports. (Docket No. 341).

- American's Motion for Partial Summary Judgment on Fact Issues Pursuant to
  FRCP 56(d)(1) Motion as to the Number Of Occurrences.  (Docket No. 346).

- American's Motion for Partial Summary Judgment Declaring that All Asbestos Claims Against AstenJohnson Inc., Arise From a Single Occurrence Pursuant to Rule 56(d). (Docket No. 368).

**RESPECTFULLY SUBMITTED,**

Dated: August 18, 2010                         _/s/ Michael Conley_____
                                               Michael Conley, Esq.

                                               **Attorney for Plaintiff**
                                               **AstenJohnson, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2010, I electronically filed Plaintiff's Pretrial

Memorandum with the Clerk of the Court using the ECF system which will send notification of

such filing to the following:

/s/  Michael Conley
Michael Conley, Esq.