**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ASTENJOHNSON, INC. | : |
| | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 03 CV 1552 |
| | : |
| CONTINENTAL CASUALTY COMPANY , *et al*. | : |
| | : |
| Defendants. | : |
| | : |

**DEFENDANT AMERICAN INSURANCE COMPANY'S
PRE-TRIAL MEMORANDUM**

American Insurance Company ("American") by its undersigned counsel, submits this pre-trial memorandum pursuant to Local Rule 16.1(c).

1.      **NATURE OF ACTION AND JURISDICTION**

What remains of this action is AstenJohnson, Inc.'s ("Asten") declaratory judgment claim against excess insurer American, primarily relating to the intent and interpretation of an "Asbestosis Exclusion" contained in policies issued by primary insurer Columbia Casualty Company ("Columbia"), and related affirmative defenses and counterclaims.  Asten and Columbia recently settled Asten's remaining claims against Columbia.  This court's subject matter jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

2.        **BRIEF STATEMENT OF FACTS OF THE CASE**

This litigation arises out of Asten's request for insurance coverage for asbestos claims made twenty years after the policies in dispute were first issued.  Asten seeks a declaration that coverage is available under liability policies issued by American for the policy period April 1, 1981-April 1, 1982 and April 1, 1982-October 2, 1983, at least for claims that allege injuries other than the disease asbestosis.  American contends that the disputed policies (and the policies to which they follow form in relevant part) were clearly intended to exclude coverage for all asbestos-related claims, and that the policies should be interpreted consistent with this intention and/or that the policies should be reformed to the extent necessary to make this exclusion clear. Subsidiary to this issue, Asten contends that a second $10 million aggregate limit is available to pay asbestos claims under the 1982 American Umbrella and American Excess Policies for the final 6-month period of those 18-month policies.

Asten, a manufacturer of dryer felts for the paper industry, some of which used to contain asbestos, has been sued in thousands of asbestos claims, primarily for bodily injury, which allege liability against Asten arising from exposure to Asten's asbestos-containing products as well as its involvement in the Asbestos Textile Institute, a former asbestos industry trade association. The first of the asbestos claims were served on Asten in 1978 or 1979, prior to the issuance of the policies at issue in this litigation.

American, an affiliate of Fireman's Fund Insurance Company, issued eight policies to Asten from April 1, 1979 through December 31, 1985.  Of these policies, the first two, which were issued for the policy periods of April 1, 1979 to April 1, 1980 and April 1, 1980 to April 1, 1981, are not at issue in this action because those policies are not subject to asbestos exclusions. American currently is defending and indemnifying Asten under these policies.  The American policies issued after October 1, 1983 are not at issue in this litigation because they are subject to

2

a different form of asbestos exclusion that Asten concedes is sufficient to exclude coverage for all asbestos-related claims.

In this litigation, Asten seeks a declaration that coverage is available under three policies, two first-layer umbrella excess and one third-layer excess, issued by American for the policy period from April 1, 1981 to April 1, 1982 (the "1981 American Umbrella Policy"), and from April 1, 1982 to October 1, 1983 (the "1982 American Umbrella Policy," and the "1982 American Excess Policy," respectively).  Columbia issued the underlying primary policies (the "1981 Columbia Primary Policy" and the "1982 Columbia Primary Policy) to Asten, that are subject to an exclusion which reads:

<u>Asbestosis Exclusion</u>

> It is agreed that this policy does not apply to any claim alleging an exposure to or the contracting of asbestosis or any liability resulting therefrom.

> It is further agreed that this policy does not apply to any claim arising out of the Insured's membership in the Asbestos Textile Institute.

The American policies are subject to an endorsement which effectively "follows form" to this exclusion in the Columbia policies.  In fact, the American policies were issued based on representations of Asten's agent, Babb, Inc. ("Babb"), that the Columbia policies excluded all asbestos products claims.  There is no evidence that American saw the Columbia policy or the disputed "Asbestosis Exclusion" prior to the issuance of the American policies, or indeed, prior to the commencement of this action.

The parties' relevant course of dealing prior and subsequent to the issuance of the policies has been set forth at length in the Findings of Fact contained in the Court's March 30, 2007 opinion.  Prior to the placement of the April 1, 1981 policies, Asten had already been sued in asbestos cases, and was well aware that its asbestos liability exposure created problems in

obtaining insurance.  Asten used the same broker and legal agent, Babb, which it had used to

obtain insurance coverage in prior years to submit applications to Columbia, a surplus lines

carrier,[1] and to American.  As Asten's procuring agent, Babb negotiated coverage with the

Insurers.  Asten specifically sought a policy without coverage for its asbestos liabilities, or one

with a large deductible.  It was represented to American that American's policies followed form

in relevant part to Columbia policies that excluded from coverage all asbestos-related claims.

The Policies were renewed on April 1, 1982 for an eighteen month period.

 While the policies were in force and for the twenty years after, Asten never pursued

coverage under the policies at issue, even while vigorously pursuing all of its pre-April 1, 1981

primary insurance carriers.  By July 1980, Asten had sued all of its pre-April 1, 1981 primary

carriers, and, in September 1980, amended its initial complaint to add the Argonaut policy which

was then in force.  However, it did not add Columbia or notify American of any intent to pursue

coverage under the policies at issue even though Asten was paying out its own pocket until 1997

to defend and settle many claims.

 Babb's Gloria Forbes has testified that she understood the term "asbestosis" to include all

disease processes caused by exposure to asbestos, and thus she understood the "asbestosis"

exclusion to bar all claims alleging any such diseases.  Babb confirmed this understanding to

Asten, providing Asten with an insurance binder for the 1981 Columbia Primary Policy detailing

the Columbia coverage with "special conditions" that "Coverage excludes Asbestos Products and

Asbestos Textile Institute."  Further, Asten never counted the post-1981 coverage as being

─────────────────────

[1] A surplus lines underwriter is not admitted in the state to issue policies, and is therefore not
subject to all of the same restrictions as admitted insurers.  Surplus lines carriers typically charge
a greater premium for coverage, and are generally used when an account has problems which
make it difficult to find insurance in the admitted market.  Here, Asten had a problem with
asbestos claims.

available to pay asbestos claims in its reports to its auditors or to its board of directors when it clearly would have been in its interest to do so.

This Court previously held an eleven-day bench trial in July and September 2006, and issued its opinion on March 30, 2007 ruling in favor of the insurers on numerous issues.  As it affects American, the Court found that the parties intended to exclude all asbestos-related claims under the policies, and that either the term asbestosis was meant by the parties to encompass all asbestos-related claims or, alternatively, that the contested exclusion's language should be reformed to add the word asbestos to the following phrase to exclude "any claim alleging an exposure to [asbestos] or the contracting of asbestosis or any liability resulting therefrom.  The Court further held that there was no additional aggregate limit for an 18-month "stub" period for the 1982 American Umbrella and excess policies because the 18-month policy period was a single "annual period," and that the 1982 American Excess Policy did not impose any defense obligation on American.

Asten appealed the Court's ruling to the Third Circuit.  In an opinion dated April 2, 2009, affirmed in part and vacated in part this Court's judgment.  The Third Circuit upheld this Court's rulings with respect to its finding that American does not have a duty to defend or pay defense costs under the 1982 American Excess Policy.  The Third Circuit, however, found that Asten was entitled to a jury trial with respect to its declaratory judgment claims, and remanded the case for a jury trial.

To the extent Asten submits a statement of facts, American disputes it to the extent that it is at variance with American's Statements of Undisputed material facts submitted in conjunction with its pending summary judgment motions.

**3.      RELIEF REQUESTED**

Asten seeks a declaration that American must provide prospective indemnity and defense coverage for asbestos-related claims, other than claims for the specific disease asbestosis under its policies at issue.  American seeks a declaration that it owes no obligations to Asten for any asbestos claims under those policies.  Alternatively, American seeks reformation of the policies to state the mutual intent to exclude all asbestos liabilities, or to have Asten equitably estopped from denying that the policies exclude coverage for asbestos claims, or rescission of some or all of the American Policies on the grounds of material misrepresentations by Asten.  In addition, Asten seeks a determination that separate $10 million aggregate limits are available under the 1982 American Umbrella and Excess Policies for the final six months of those policies. American seeks a declaration that there is but one aggregate limit available for the entire period, or alternatively, that only a single $10 million "per occurrence" limit is available under each policy because Asten's decision to manufacture asbestos-containing products constitutes the single "occurrence" from which all of the asbestos-related claims against Asten flow.

**4.      WITNESSES AND DEPOSITION TESTIMONY**

American incorporates by reference its live and deposition witness lists, and deposition designations, previously filed on January 31, 2006, and attached as Exhibits A, B, and C.  To the extent that the experience of the first trial is any guide, however, American believes it will call approximately 3-4 witnesses live, including experts, and will also seek to limit the volume of designated deposition testimony to be read to the jury.

5.    **TRIAL EXHIBITS**

American incorporates by reference its January 31, 2006 designation of Trial Exhibits and February 2, 2006 supplemental designation of Trial Exhibits, copies of which are attached as Exhibits D and E.   Copies of party exhibits were exchanged in advance of the 2006 trial, and objections were submitted at that time.

6.    **ESTIMATE OF TRIAL DURATION**

This Court has allotted four weeks for this trial, including jury selection.  Depending on the Court's disposition of pending summary judgment motions, the need for a trial may be eliminated or the duration of the trial may be shortened by a week or more.

7.    **LEGAL ISSUES AND OTHER MATTERS**

    A.    **Pending Summary Judgment Motions**

        1.    Babb, Inc. and Babb's Gloria Forbes Were Asten's Agents

The evidence is uncontradicted that, in its dealings with American and Columbia, Babb and its employees, including Gloria Forbes, functioned, in the Third Circuit's words, as Asten's "procuring agents."  American's Partial Joinder in Columbia Casualty Company's Second Motion for Summary Judgment and Cross-Motion for Summary Judgment on Grounds of Equitable Estoppel (filed July 13, 2010) sought a determination that Forbes' actions and representations are imputed to, and are binding upon, Asten.  The Court should grant American's motion in this respect.

        2.    The Court Should Determine that Only a Single $10 Million "Per Occurrence" Limit Is Potentially to Pay Asbestos-Related Claims Under the 1982 American Umbrella and Excess Policies

Asten contends that, assuming that any coverage for asbestos-related claims is afforded under the 18-month 1982 American Umbrella and Excess Policies, the total policy limits available under each of these policies to pay asbestos-related claims would be $20 million.  This

Court ruled that the "aggregate" limits of these policies was $10 million dollars each for the entire 18-month policy period.  The Third Circuit, however, determined that there was a fact issue as to whether the "aggregate" limits were "annualized" such that a second set of $10 million "aggregate" limits was available under these policies for the final six months of the 18-months.

Although American briefed it, neither this Court nor the Third Circuit addressed American's alternative, issue-dispositive argument, which is the following:  First, irrespective of whether there is a second "aggregate" limit available for the final six months of these 18-month policies, it is indisputable that there is but a single "per-occurrence" limit of $10 million potentially available under each of these policies.  The policies contain no language providing for the annualization of the per-occurrence limit.  Second, under settled Pennsylvania law, all of the asbestos-related claims against Asten arose from a single "occurrence" – Asten's decision to manufacture dryer felts containing asbestos.  Accordingly, it follows as a matter of law that the most that could possibly be available under the 18-month policies to address asbestos-related claims is the single $10 million per-occurrence limits of these policies.  It further follows that there is no need for a trial to resolve the issue of whether there might be a second aggregate limit available under these policies, since any such additional limits would only be available to respond claims that were not asbestos-related, and therefore arose out of a separate "occurrence."

This contention is the subject of American's pending Motion for Partial Summary Judgment Declaring that All Asbestos Claims Against AstenJohnson Arise from a Single Occurrence (filed June 16, 2010).  American's motion is supported by the precedent of the Third Circuit in *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330 (3d Cir. 2005) (applying Pennsylvania law and the 'cause of loss' test to uphold the district court's conclusion that all "'the asbestos claimants' injuries stem form a common source, that is, the manufacture and sale

of the asbestos-containing products'"); the Pennsylvania Supreme Court in *Donegal Mutual Ins.*

*Co. v. Baumhammers*, 595 Pa. 147 (2007) (number of occurrences under standard CGL policies

is determined by the "cause" rather than the "effects" of the damage); and of this Court in

*Greene, Tweed & Co. v. Hartford Accident and Indem.* Co., 2006 WL 1050110, *9-11 (E.D. Pa.

April 21, 2006) (rejecting argument that "per occurrence" limits are annualized under

substantially identical policy language).

This Court should grant American's pending summary judgment motion and enter an

order declaring that to the extent that any coverage for asbestos-related claims is found to exist

under American's April 1, 1982 – October 1, 1983 policies, such claims would be subject to a

single "per occurrence" limit of $10 million applicable only once to the entire 18-month policy

period of such policies.

        3.        The Court Should Grant American's Motion for Summary Judgment On Fact Issues Pursuant to Fed. R. Civ. P. 56(d)(1)

Many of the Court's prior findings of fact cannot be legitimately disputed.  After Court-

directed efforts to develop a joint stipulation foundered on Asten's professed "fundamental"

opposition to proceeding in this manner, the Insurers were granted leave to file a fact summary

judgment motion.  The Insurers submitted a 35-page Statement of Undisputed Material Facts,

almost entirely derived from the Court's findings, and intended to avoid any credibility issues or

potentially-objectionable characterizations.

The Court's procedures provide: "All material facts set forth in the statement required to

be served by the moving party may be taken by the court as admitted unless controverted by the

opposing party."  Continuing its "fundamental" opposition to this process, Asten has ignored this

directive, and instead attacked the process itself.[2]  Its complaints are not well-founded.

---

[2]  Instead of attempting to controvert specific facts claimed to be undisputed in the Insurers'
Statement, Asten instead submitted a purported "Counterstatement of Facts," many of which, on

Asten argues that Rule 56(d)(1) does not authorize a motion to establish facts independent of a Rule 56(b) motion.  From that premise, it argues (Asten Opp. At 3) that "because Defendants have not sought 'summary judgment on all or part of the claim' … [it] should be denied as procedurally defective."  As just discussed above, American's summary judgment motions were directed toward *all* of Asten's remaining claims – on the main claim on grounds of equitable estoppel and on the so-called "stub" issue on the basis that the claims all arise from a single occurrence (which motion remains *sub judice*).  Considering these legal summary judgment motions, there certainly is authority under Rule 56(d)(1) for the Court, with or without the assistance of the Insurers' complementary fact-based motion, to narrow the issues and facts requiring trial in light of the Court's determination that American is not entitled to summary judgment on its equitable estoppel defense.

Asten (Opp. at 7) asks the Court to order the parties to work toward adopting a stipulation of facts.  But despite American's efforts, that process already failed.  Indeed, the Court authorized the filing of the Insurers' "fact" motion precisely because, after representing to the Insurers for nearly a month that Asten was giving serious consideration to the Insurers' proffered stipulation, Asten announced that it was "fundamentally" opposed to any meaningful effort to simplify the trial by stipulating to the many indisputable facts that took days of trial time to establish in 2006.

As for "how the Proposed Findings would be used at trial" (Opp. at 3), the answer is found in Local Rule 16.1(d)(2), which contemplates a "comprehensive written stipulation of all uncontested facts in such form that it can be read to the jury as the first evidence at trial."  This is not to say that the jury will not have the opportunity to consider many of the physical exhibits on

_____

their face, are highly slanted, largely disputed, legal conclusions, or even completely controverted by the record evidence.

which most of these findings are based, nor that some of these facts might be repeated in the testimony of witnesses. But it will spare the jury from hearing many hours of tedious testimony that the Court was forced to endure at the first trial establishing these incontrovertible facts. Further, it should obviate the need to read substantial portions of deposition to the jury that were designated merely to document these facts.

The Court therefore should narrow the issues in dispute, and shorten the length of the trial, by declaring as undisputed the facts documented in the Insurers' Statement of Undisputed Material Facts.

### B.    Contract Interpretation

The central issue in this case is the interpretation of the insurance policies. American contends that the asbestos exclusion applies to its policies and bars coverage for all of Asten's asbestos-related liabilities. Asten contends that the exclusion bars only liability for underlying asbestos claims where the plaintiff has only the disease asbestosis, as distinguished from other asbestos-related illnesses, for which Asten claims there would be coverage. Under Asten's view, because asbestos claims are rarely limited to only one disease or injury, American would be obligated to defend virtually all of the asbestos claims against Asten, despite the exclusion, and to indemnify claims involving any asbestos-related disease other than "asbestosis."

As the Third Circuit's opinion in this case confirms, the interpretation of the policy language in question should take place within the context of the policies as a whole, and in light of the parties' actual, mutual intent and course of performance, and the trade usage associated with the term "asbestosis" in underwriting and policy exclusions, as demonstrated by the evidence.[3] The policies are not legally ambiguous because while the disputed exclusion is

_____

[3] While the authorities have been extensively briefed in the summary judgment papers previously submitted to this Court, for ease of the Court's reference, American includes a few principle citations here. As this Court has observed:

inartfully phrased, it can reasonably be construed only one way, and is therefore not legally

ambiguous.  Legal ambiguity arises only when contract language can be reasonably construed in

at least two different ways.[4]  The language excluding "**any claim alleging an exposure to or the**

---

Even when a contract seems unambiguous, however, "the course of performance of the parties is always relevant in construing a contract."  *Prusky*, 2001 U.S. Dist. LEXIS 24189, AT *4 (E.D. Pa. Dec. 3, 2001); *see also Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001) (noting that under federal contract law, "to decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear … We consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation.  Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning.")  (*citations omitted*)).  A court, therefore, may look to the parties' course of conduct to determine whether a contract is ambiguous, *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736, 741 n.6 (1978), and/or to resolve an ambiguity.  *Resolution Trust Corp. v. Urban Redevelopment Auth.*, 536 Pa. 219, 638 A.2d 972, 975 (Pa. 1994).  *Prudential v. Prusky*, No. Civ.A. 04-CV-462, (E.D. Pa. July 22, 2005), 2005 U.S. Dist. LEXIS 14778, 2005 WL 1715659, slip op. at *4.

Ambiguities are construed against an insurer only as a *last resort*, only where parol evidence fails to clarify the meaning of the contract.  *See Prusky v. Prudential Ins. Co. of America*, No. 00-2783, slip. Op. (E.D. Pa. Oct. 30, 2001), 2001 U.S. DIST. LEXIS 24080 (AT *73-74); *Sun Co. v. Pennsylvania Turnpike Comm'n.*, 708 A.2d 875, 879 (Pa. Commw. Ct. 1998).  *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 200-201, 202 n. 5 519 A.2d 385 (Pa. 1986) ("Our first obligation is to examine the extrinsic evidence and resort to rules of construction only should that examination prove fruitless"); *see also 12th Street Gym, Inc. v. Guzzardi*, 93 F. 3d 1158, 1166 (3rd Cir. 1996).

[4] A policy provision is only ambiguous if "reasonably intelligent" people considering it in the context of the entire policy, would "honestly differ as to its meaning."  *Schneider v. UNUM Life Ins. Co. of Am.*, 149 F. Supp. 2d 169, 186 (E.D. Pa. 2001); *Patterson v. Reliance Ins. Cos.*, 332 Pa. Super. 592, 596, 481 A.2d 947, 949 (1984).  "[A] party cannot lift one clause out of an insurance contract and attach a meaning to it considered in isolation."  *Harbor Insurance v. Lewis*, 562 F. Supp. 800, 805 (E.D Pa. 1983).  Unclear terms are clarified by reference to other terms.  *Giancristoforo v. mission Gas and Oil Products*, 776 F. Supp. 1037, 1041 (E.D. Pa. 1991).  An insurance policy must be construed to give effect to every word, if possible, and to all of its provisions.  *Newman v. Massachusetts Bonding & Ins. Co.*, 361 Pa. 587, 591-592, 65 A. 2d 417, 419 (1949); *Masters v. Celina Mut. Ins. Co.*, 209 Pa. Super. 111, 115, 224 A.2d 774, 776 (1966).

**contracting of asbestosis or any liability resulting therefore"** makes sense, especially given the extrinsic evidence, only when construed to bar all the asbestos claims.

The exclusion bars any claim alleging either "exposure" "**or**" "contracting." These terms must be given independent meanings.  Because one cannot contract asbestosis, or any other asbestos bodily injury, from exposure to another who has the disease, but rather only from exposure to the mineral asbestos, the phrase "exposure to … asbestosis," read in context, must intend exposure to *asbestos,* the condition which causes asbestosis, as well as all other asbestos related diseases.  The exclusion embraces all exposure to asbestos and "any liability resulting therefrom."  Put another way, exposure to conditions which cause asbestosis, is the same exposure which causes other asbestos related diseases.  The exclusion applies to that exposure and "any liability resulting therefrom."  Thus, if the exposure causes mesothelioma or lung cancer, then that liability is excluded as well.

This interpretation is consistent with all the documentation surrounding the underwriting of the policies, from Asten's initial request to the broker to obtain policies which excluded asbestos liabilities, to the confirmation communications between the brokers and insurers, to the binders issued for the coverage which referenced excluding "asbestos products".  All this documentation reflects the intent to broadly exclude asbestos claims, not merely asbestosis claims.

Further, this interpretation is consistent with all the testimony of persons involved in the process.  The broker from Babb and the underwriter from Columbia both previously testified that they used the terns "asbestosis" in a generic manner to refer to all asbestos liabilities.  No one from Asten involved in the process testified otherwise.  Moreover, at the time the policies were issued, both Columbia and American were consciously avoiding asbestos liabilities either by not offering to underwrite accounts with such liabilities or excluding those liabilities.

In addition, this interpretation is consistent with the "trade usage" evidence American will present that underwriters and brokers frequently referred to all manner of asbestos-related claims as "asbestosis claims" in the early 1980's. Indeed, a significant case decided at that time held that "asbestosis" was used to encompass all asbestos related diseases based on testimony of people in the industry.

That Asten fully understood the real intent of the exclusion is demonstrated by its own actions. For over 20 years Asten tendered the asbestos claims to its pre-1981 insurers that did not have asbestos exclusions. Asten litigated over coverage with those insurers for many years. It added insurers to that litigation, but never added post-1981 insurers. Not until 2001 did Asten finally decide to seek more coverage than it purchased; so it started tendering claims to Columbia and American under their post-1981 policies.

### C. Reformation

Alternatively, American seeks reformation of the contracts to reflect the mutual intent of the parties, should it be determined that the asbestos exclusion as written fails to reflect that intent.

### D. Rescission

American has asserted a claim for rescission based upon evidence that Asten's brokers told American it would have an asbestos products exclusion, and that the underlying Columbia policies were subject to such an exclusion. It is on this basis that American agreed to issue the policies. If it is determined that the exclusion is partial and not total, as Asten contends, the representations made to American were false, and American is entitled to rescind the policies.

### E.      Duty to Pay Defense Costs

The Third Circuit Court of Appeals upheld this Court's ruling that American is not obligated to defend or pay defense costs under its 1982 Excess Policy.  Therefore, the duty to pay defense costs is no longer an issue in this litigation.

### F.      Equitable Estoppel

American also has raised the affirmative defense of equitable estoppel on the grounds that American reasonably relied upon representations of Asten's agents that American followed form to Columbia policies that excluded coverage for all asbestos-related claims, and would prejudiced were Asten permitted now to take positions inconsistent with its prior representations.

This is not, as Asten has argued, a recasting of American's rescission claim, which is premised upon American's having issued its policies in the first place in the face of misrepresentations by Asten.  Equitable estoppel is a distinct defense.  It seeks different relief – estopping Asten from seeking to contradict Ms. Forbes' express representations to American both before and after the subject American Policies were issued.  It is based upon a different kind of prejudice – prejudice to American's ability to prove in the first decade of this century that Ms. Forbes' prior representations to American were indeed correct.  And it is based on a different kind of reliance – American's forbearance from seeking to establish in the early 1980s that Ms. Forbes' representations in fact accurately stated the meaning and intent of the "Asbestosis Exclusion" in Columbia's Policies.  Moreover, this defense does not depend upon whether or not American actually received copies of the Columbia Policies, since Asten agent Gloria Forbes unequivocally represented to American that Asten agreed that the Columbia Polices "Exclud[e] Asbestos Related Claims.  (AMER615A).

The Court recently denied American's summary judgment motion on equitable estoppel (viewing the undisputed facts most favorably to Asten).  American nevertheless continues to

believe that its defense on this ground is meritorious and that it should prevail after all the relevant evidence has been presented at trial for consideration by the Court unconstrained by the restrictive summary judgment standard.  American believes that this equitable issue is for the Court, not a jury, to determine.

### F.      Jury Issues

#### 1.      Number of Jurors

Given the anticipated length of the trial, American submits that this trial qualifies as an "unusually protracted" trial under Local Rule 48.1(b)(2).  American respectfully requests that a jury of 12 be empanelled to guard against the possibility of a mistrial due to the need to excuse jurors.

#### 2.      Voir Dire Questionnaire

American requests the ability to submit a jury questionnaire to be completed by the venire of potential jurors in advance of live voir dire to be submitted by September 1, 2010.

#### 3.      Jury Instructions

The parties previously submitted proposed jury instructions in advance of the first trial. In light of subsequent developments, however, American believes that it is appropriate for the parties to submit new proposed jury instructions in order to account for, *inter alia*, the guidance provided by the Third Circuit's opinion as well as the departure of Columbia from the case.

### G.      Confidentiality Concern

Prior to the last trial, there was a concern that certain evidence may have been subject to the attorney-client privilege and/or work product doctrine within the tripartite relationship of Asten, its asbestos defense counsel, and its insurers may be introduced.  At the first trial, however, no exhibits were given confidential treatment and, moreover, the vast majority of the trial exhibits were included in the Third Circuit Appendix, which, with a very limited exception

of a few documents, was filed openly.  To the extent that any confidentiality concerns remain, American reserves the right to request measures designed to protect the confidentiality of such materials.

**8.   STIPULATIONS**

American proposes to stipulate that all exhibits are authentic for purposes of Fed. R. Evid. 902 and that all exhibits representing documents produced from the files of any party to this action were maintained in the ordinary course of business of such party for purposes of Fed. R. Evid. 803(6).

**9.   OBJECTIONS TO EVIDENCE**

American's objections to Asten's Exhibits are attached as Exhibit F.

American previously filed (or joined) the following motions in limine, which were granted by this Court on the dates noted, and incorporates them by reference as further objections to evidence:

1.      American Insurance Company's Motion In Limine Regarding Regulatory Approval of Policy Form (granted February 2, 2006, per Order attached as Exhibit G.

2.      Columbia's Motion In Limine to Preclude AstenJohnson, Inc. from Presenting Argument or Evidence Concerning Columbia's Alleged Failure to Obtain Approval from the Pennsylvania Department of Insurance for the Subject Asbestosis Exclusion (granted February 2, 2006, *see* Ex. G).

3.      American Insurance Company's Motion In Limine to Exclude Documents Regarding General Knowledge of Asbestos, including the exhibits numbered 1 through 69 submitted by Asten attached to the Affidavit of Michael Conley (granted June 22, 2006 per Order attached as Exhibit H).

4.     Columbia's Motion in Limine to Preclude AstenJohnson, Inc. from introducing

David Sayles' Deposition Testimony From Another Proceeding (granted June 22, 2006, *see* Ex.

H).

Dated: August 18, 2010                     Respectfully submitted,

                                           **COZEN O'CONNOR**

                                           By: /s/ Jacob C. Cohn
                                                William P. Shelley
                                                Jacob C. Cohn
                                                Ilan Rosenberg
                                                1900 Market Street
                                                Philadelphia, PA 19103
                                                (215) 665 – 2000

                                           **KOCH & DeMARCO, LLP**

                                                Susan Simpson Brown
                                                Jenkintown Plaza, Suite 460
                                                Jenkintown, Pennsylvania  19046
                                                (215) 881-9931

                                                Attorneys for Defendant, American Insurance
                                                Company

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2010 a true and correct copy of the foregoing

**American Insurance Company's Pre-Trial Memorandum** was served by ECF and electronic

mail to the following counsel listed below:

| | |
|---|---|
| Michael Conley, Esq<br>Offit Kurman<br>Three Parkway, Ste. 1300<br>1601 Cherry St.<br>Philadelphia, PA 19102<br>**Counsel for Asten Johnson** | Robert C. Heim, Esq.<br>Alexander Bilus, Esq.<br>Dechert LLP<br>Cira Centre<br>2929 Arch St.<br>Philadelphia, PA 19104<br>**Counsel for Asten Johnson** |
| Ronald P. Schiller, Esq.<br>Nicole J. Rosenblum, Esq.<br>Hangley Aronchick Segal & Pudlin<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>**Counsel for Columbia Casualty Company** | Rhonda O. Orin, Esq.<br>Anderson Kill & Olick, LLP<br>1717 Pennsylvania Ave. NW<br>Suite 200<br>Washington, D.C. 20006<br>**Counsel for Asten Johnson** |
| Jay I. Morstein, Esq.<br>Hangley Aronchick Segal & Pudlin<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>**Counsel for Columbia Casualty Company** | |

**COZEN O'CONNOR**

By: /s/Jacob C. Cohn
        Jacob C. Cohn, Esq.
        1900 Market St.
        Philadelphia, PA 19103
        Attorney for Defendant, American Insurance Co.